IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| DYNALYST CORPORATION | : | Case No. 18-10860-tmd |
| | : | Chapter 11 |
| DEBTOR | : | |

<u>COMBINED DISCLOSURE STATEMENT
AND PLAN OF REORGANIZATION</u>

INTRODUCTION

On July 2, 2018 Dynalyst Corporation filed its petition for bankruptcy under Chapter 11 of Title 11 of the United States Code. The Debtor has prepared and filed this Combined Disclosure Statement (the Statement) and Plan of Reorganization (the Plan) and is seeking the Court's approval for submission of the Statement and Plan to the holders of claims with respect to the Debtor and its assets.

The purpose of this Statement is to provide holders of claims against the Debtor with adequate information about the Debtor and the Plan, to permit such persons to make an informed judgment about the merits of voting for the approval of the Plan. In addition to this Disclosure Statement and Plan, creditors will be provided with a ballot which may be used to vote for the acceptance or rejection of the Plan. That ballot should be completed and returned to Larry A. Vick, Attorney for Debtor-in-possession, at 10497 Town & Country Way, Suite 700, Houston, Texas 77024, to be received prior to the date of the hearing on the Confirmation of the Plan. The Notice of the hearing on the Confirmation of the Plan will be provided by the Court. While creditors are invited to attend this hearing, attendance is not required to have one's vote considered. YOUR VOTE FOR DYNALYST CORPORATION'S PLAN IS SOLICITED.

The Creditor's vote on the Plan is important. For the Plan to be confirmed by the Court 66 2/3% of the total dollar amount of claims voting, and more than 50% of the total number of claims voting in each class must accept the Plan. If the requisite acceptances are not obtained, the Plan may nevertheless be confirmed by the Court pursuant to the provisions of 11 U.S.C. § 1129 if the bankruptcy court finds that certain conditions are met. These conditions are set forth in § 1129(b) of the United States Bankruptcy Code and require a showing that claimants in a non-consenting class will receive either the full value of their claims, or if they receive less than full value, no class with a junior liquidation priority will receive anything. These complex statutory provisions and this summary is not intended to be a complete statement of the law. The Debtor, however, may choose to rely upon the provisions of § 1129(b) of the United States Bankruptcy Code and seek confirmation of the plan if the plan is not accepted by an impaired class or classes.

No representations regarding the Debtor are authorized other than set forth in this Disclosure Statement. Any representations or inducements made to secure a vote on the Plan which are other than as contained in this Statement should not be relied upon in arriving at a decision. Any such additional representations and inducements should be reported to the Court

and to Larry A. Vick at 10497 Town & Country Way, Suite 700, Houston, Texas 77024, for such action as may be deemed appropriate.

THE DEBTOR

## I. HISTORY AND NATURE OF BUSINESS AND REASONS FOR THE CHAPTER 11 FILING

**The Debtor**. Dynalyst Corporation is a corporation whose primary offices are located at 1008 Carlos G. Parker Blvd., SW, Taylor, Texas 76574-4511.

**Debtor's History, Assets and Value**.

Originally the Debtor was known as Dynalyst Manufacturing Corporation which was established in 2002 after a Taylor, Texas Economic Development Council-sponsored company failed, leaving a six-million-dollar project in need of succession. These assets and the basic focus serving the automated test equipment chip market were recapitalized with a new loan of approximately $2,500,000. The company issued stock as a public company in 2005. In 2009 the company merged its public shell with Universal Media Corporation (now Greenway Technologies, Inc. & trading under the symbol: GWTI) and spun off the respective assets, out from the publicly traded company and into a newly formed and wholly owned private company named Dynalyst Corporation, now your Debtor.

Debtor is a Texas Corporation and is controlled by T. Craig Takacs in his capacity as managing director for Reveille Capital, LLC. Reveille Capital is the controlling ownership of the company.

Debtor's focus is the fabrication and assembly of low-lot, quick turn-around, multi-layered printed circuit boards for the semiconductor manufacturer test market. The market is also referred to as the Test, Assembly & Packaging ("TAP") sector, with the chip testing segment referred to as the "Back-End Equipment" sector.

One of Dynalyst's cornerstone customers is a prominent global chipmaker who dominates the market to supply chips for the automotive sector that power the auto's electronics and (emerging) "connectivity" requirements to the internet and for semi-autonomous driving. Debtor has developed a base of customers that has allowed it to generally meet its cash flow demands since filing this Chapter 11 proceeding. For future projections debtor has acquired a customer whose needs for Debtor's goods and services will require Dynalyst to scale up production, hold finished inventory to meet this customer's order fulfilment as received without disruption to the customer's own chip production/delivery commitments. Dynalyst is the only vendor currently "qualified" by this customer to support this particular project.

## II. EVENTS LEAVING UP TO BANKRUPTCY

The Debtor filed bankruptcy after the following events made it determine that bankruptcy was the best course of action for Dynalyst and its creditors.

On August 8, 2013, Debtor suffered a fire in the plating area of the manufacturing plant. Though the fire itself was isolated to a copper plating machine the fire spread producing corrosive smoke throughout the entirety of the plant. The fire forced Debtor to close operations for a period of time while advising customers that Debtor was seeking to "outsource" the copper plating process. The reduction in deliveries of product to 30 percent of its capacity caused a temporary loss in customers. But over the subsequent year and a half Debtor replaced its specialized machines using insurance proceeds but with newer, more efficient equipment. Debtor has yet to achieve full capacity but believes that this goal is achievable in the near future.

Lack of cash flow caused Debtor to fall behind in its monthly debt obligations. It's primary secured creditor, National Loan Acquisition Company was not satisfied with the delay in monthly payments by Debtor and, after failing to meet National's demands, this creditor posted and scheduled Debtor's real estate for non-judicial foreclosure to occur on July 3, 2018. Debtor was unable to reach a suitable arrangement with National Loan to satisfy the delays in payments and sought protection under Chapter 11 of the Bankruptcy Code on July 2, 2018.

## III. HISTORY OF LITIGATION

### Summary of Litigation Involving Debtor's Estate

On March 16, 2018 the County of Williamson, Texas, collecting property taxes for itself and the City of Taylor, Texas and Taylor Independent School District file a suit to collect delinquent property taxes. The suit was stayed pursuant to the 11 U. S. C. 362 automatic stay. The liability for the taxes claimed in this suit are treated in Claim No. 3 filed by the county on July 6, 2018. Interest accrued since the date of petition but penalties are waived.

To the knowledge of the Debtor, there is no non-bankruptcy or bankruptcy litigations involving the Debtor that was pending at the date of petition or during the pendency of this case.

## IV. DESCRIPTION OF ASSETS

Dynalyst Corporation filed schedules of all assets and liabilities on July 16, 2018. Detailed listings of the assets of the estate are as reflected on Schedule B of Schedules of Assets filed with the Bankruptcy Court. Copies of these records are on file with the Bankruptcy Clerk's Office, 903 San Jacinto Blvd., Austin, Texas and may be obtained in the Bankruptcy Clerk's office or by written request to Debtor's counsel.

## V. SOURCES OF INCOME

In the last three years, Dynalyst Corporation. primary sources of income have been:

| Year | Source | Amount of Income |
|------|--------|------------------|
| 2015 | General Revenues | $1,529,953 |
| 2016 | General Revenues | $1,579,398 |
| 2017 | General Revenues | $1,517,706 |
| 2018 | General Revenues | $1,086,683 |

3

| Year | Source | Amount of Income |
|---|---|---|
| Year to date | General Revenues | $ 160,000 Approximate* |

*The year to date downturn in general revenues reflects the seasonal nature of Debtor's industry.

## VI. DESCRIPTION OF REORGANIZATION

The Debtor intends to reorganize its finances through a combination of the following:

Dynalyst expects a commitment from a long-term lender within 30 days of the date of the filing of this Combined Disclosure Statement and Plan to provide sufficient capital to purchase the promissory note and its security agreements that will satisfy the creditor (NLAC) in Class 3A noted below. The Debtor will file a motion to obtain secured credit and seek Court permission for authority to enter the transaction with the long-term lender.

The Debtor believes that its income in each of the next five years will be:

| Year | Dynalyst Corporation | Income |
|---|---|---|
| 2019 | estimate | $ 2,108,419 |
| 2020 | estimate | $ 2,479,060 |
| 2021 | estimate | $ 2,676,333 |
| 2022 | estimate | $ 2,849,070 |
| 2023 | estimate | $ 3,085,155 |

Debtor has taken steps to operate on a more efficient "income to expense" ratio which Debtor believes will provide resources to meet the projections of dividend distributions to the various classes of creditors.

The efforts to increase cash flow and to become more efficient are as follows:

1) Stock base materials in advance of standard "10 day turn" orders to meet the customers' requests for on time delivery;

2) Reduce the expedite freight charges otherwise necessary to fulfill the standard "10 day turn" orders;

3) Increase the stock on hand of base materials in advance of standard "10 day turn" orders, allowing Debtor to bill for its premium 3 day and 5 day expedited orders;

4) Inventory redundant equipment parts (i.e. pumps, motors, heaters, etc.) as a matter of protocol to reduce expedite freight charges and the production disruptions to on time delivery.

## VII. FINANCIAL INFORMATION

THE INFORMATION CONTAINED IN THE PROJECTION IS ONLY AN ESTIMATE. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. ALL THE FINANCIAL INFORMATION WITH RESPECT TO THE DEBTOR AND THE CONTENTS OF THE PLAN HAS BEEN COMPILED FROM INFORMATION TAKEN FROM THE BOOKS AND RECORDS OF THE DEBTOR OR FROM THE SCHEDULES AND STATEMENTS OF AFFAIRS FILED BY THE DEBTOR. AS A RESULT, THE DEBTOR IS NOT ABLE TO WARRANT AND REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO BE ACCURATE. CREDITORS SHOULD READ THE PLAN IN FULL. CREDITORS ARE FURTHER URGED TO CONSULT LEGAL COUNSEL TO ENSURE COMPLETE UNDERSTANDING OF THE PLAN AND THIS DISCLOSURE STATEMENT.

## VIII. CLASSIFICATION OF CLAIMS

The claims against the Debtor are divided into the following classes:

Class 1:   Administrative Expense Claims.

Class 2:   Priority Claims.

Class 3:   Secured Claims

Class 4:   General Unsecured Claims

### A. ADMINISTRATIVE AND PRIORITY CREDITORS

The administrative expenses of the Debtor's Chapter 11 case allowed pursuant to the Section 503(b) of the Code and each allowed claim entitled to priority pursuant to Section 507 (a)(1) of the Code shall be paid in full on or before the expiration of 30 days after confirmation or, in the case of professional fees within 14 days after entry of order approving them or as funds become available for this purpose.

**Estimated Administrative Expenses**. The Debtor estimates administrative expenses including professional fees and expenses, and pre-confirmation U.S. Trustee quarterly fees for this case to be approximately $30,000. The administrative expenses are comprised of attorney's fees, U.S. Trustee quarterly fees, and a reserve for other possible administrative expenses.

**Avoidance and Contested Claims**. The Debtor has reviewed all payments more than $5,850.00 made within 90 days of the filing date and is not aware of any claims that should be avoided.

### B. SUMMARY OF CLAIMS AND TREATMENT UNDER THE PLAN

The following summary of claims is derived from the Debtor's records and schedule in this proceeding. Some of the figures quoted in this summary are approximations, and may vary

significantly from the actual amounts. The exact amount of each claim will ultimately be determined by (a) the amount as shown on each timely filed claim; (b) the amount as listed on the Debtor's schedules (if not listed as unliquidated, contingent or disputed); or, (c) the amount as determined by the Court in the event some of the following claims and their approximate amounts will significantly affect the amount ultimately received by each creditor under the Plan, exact amounts can be determined from the claims filed with the Court. Creditors will receive notice of pending litigation concerning any disputed claims, and information concerning the ultimate results of such litigation may be obtained from the Debtor's attorney or the Court.

The Plan of Reorganization divides claims into four (4) separate Classes (Classes 1 through 4). The classes consist of the following:

**Class 1 claims**: (including those of the U.S. District Clerk, U.S. Trustee and Debtor's Counsel) US Trustee fees are payable when due; all approved attorney fees shall be paid upon court approval of the fee applications on a payment schedule as permitted by Debtor's net income. All other administrative expenses shall be due and payable on the first day of the first month following sixty days after the Plan is confirmed. The reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation, the reorganized Debtor shall file with the court and serve on the United States Trustee a monthly financial report for each month (or portion thereof) the case remains open in a format prescribed by the United States Trustee and provided to the Debtor by the United States Trustee.

## CLASS 2 CLAIMS

**Class 2A claims**: Texas Workforce Commission filed a priority claim on July 13, 2018 for the total amount of $4,989.55 and amended the claim on August 6, 2018 to reflect a balance of $5,004.55. The claim is undisputed and shall be paid as a priority creditor monthly beginning the first day of the next month after confirmation of the Plan. The claim shall bear interest on the prepetition tax claim at 1-1/2 percent per month or 18 percent per annum and must be paid within five years of the petition date. A failure by the reorganized Debtor to make a payment to the TWC pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) days after service of written notice of default from the TWC, the TWC may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this Court. Notice of default shall be served by first class mail upon the reorganize Debtor at: 1008 Carlos G. Parker Blvd., SW, Taylor, Texas 76574-4511 and upon Debtor's attorney at: 10497 Town and Country Way, Suite 700, Houston, TX 77024, Attn: Larry A. Vick, Esq.

**Class 2B claims**: (**Federal Tax Liabilities**): The Internal Revenue Service filed an amended proof of claim on October 15, 2018 with the total amount due of $161,110.09, with $125,083.42 claimed as priority. Debtor believes the claim is overstated and will file its objection to the claim pursuant to Paragraph XII below.

**Class 2C claims: (County Tax Liabilities):** Williamson County filed a secured proof of claim (Claim No. 3) on July 6, 2018 with the total amount due of $134,439.26. It filed a subsequent claim (Claim No. 18) on January 8, 2019.

The payment to satisfy the undisputed liabilities shall be made to the taxing authorities as funds become available in the operation of Dynalyst Corporation. These claims were filed as secured claims and the Debtor does not dispute their secured status. Dynalyst Corporation shall pay the 2019 taxes timely pursuant to applicable non-bankruptcy law. Williamson County shall retain its liens for the 2016, 2017 and 2018 taxes with the same validity, extent and priority until all taxes and related interest, penalties, and fees, if any, have been paid in full.

Dynalyst Corporation shall pay Williamson County's pre-petition claims monthly with the first payment due no later than the first day of the first month which is 30 days after entry of the confirmation order, unless an objection to the claim has been filed before that date. These payments shall include interest through the date of payment in full at the applicable state statutory rate of 1% per month pursuant to 11 U.S.C. §§ 506(b), 511, and 1129. Williamson County shall retain its lien for the prepetition taxes with the same validity, extent and priority until all taxes and related interest, penalties, and fees (if any) have been paid in full. In the event of a default under the plan, notice of default shall be sent to counsel for the Debtor and the Debtor shall have 15 days from the date of such notice to cure said default. In the event of failure to cure the default timely, Williamson County shall be entitled to pursue collection of all amounts owed pursuant to applicable none bankruptcy law without further recourse to the Bankruptcy Court. Williamson County shall only be required to send two notices of default; upon a third event of default, it may proceed to collect all amounts owed pursuant to applicable none bankruptcy law without further notice. Failure to pay any post confirmation ad valorem taxes prior to their becoming delinquent under Texas law shall constitute an event of default under the Plan.

**Class 2D claims:** UnitedHealthcare Insurance Company filed its claim as priority for $8,876.19 on July 5, 2018. This claim is disputed. Dynalyst Corporation will file its objection to the claim pursuant to Paragraph XII below.

## CLASS 3 CLAIMS

**Class 3A claim**: The secured claim of National Loan Acquisitions Company (NLAC) shall be satisfied under this Plan as provided herein. The Plan constitutes a ratification, renewal and reinstatement, as applicable, of the Note and related loan documents. The Reorganized Debtor shall continue to make the payments required by the terms of the Cash Collateral Order, and as renewed and extended pursuant to the Plan, are valid and duly existing and shall have the priority as existed prepetition, without the necessity of additional recordation of such liens. Time is of the essence of the Reorganized Debtor's performance of its obligations under the Note and the related loan documents. Dynalyst anticipates a commitment from a long-term lender to provide sufficient capital to purchase the promissory note and security agreements that will satisfy Debtor's obligations to NLAC and replacing it as first lienholder. The Debtor will file a motion to obtain secured credit and seek Court permission for authority to enter the transaction with the long-term lender.

**Class 3B claim**: On Deck Capital, Inc (ODC) filed a claim of $89,903.88 as a secured claim. The Debtor treats ODC's claim as liquidated and fixed in the total amount of the claim on the day it filed its proof of claim, July 5, 2018. No interest or other charges will accrue and shall pay the claim in equal installments of $1,498.40 for 60 months with the first installment due on the 15th day of the month following confirmation of this Plan and the 15th day of each subsequent month until the total amount is paid.

**Class 3C claim:** Nissan-Infiniti LT is the lienholder and owner of the note secured by the indebtedness on the 2017 Infiniti QX50 used by Craig Takacs, the president of the Debtor, for transportation from his corporate offices to the plant facility in Round Rock, Texas. The claim will be paid according to the pre-petition contract.

## CLASS 4 CLAIMS

**Class 4A claims**: The general unsecured claims that are not disputed shall receive pro-rata distributions before the expiration of 60 months, but not before all claims of Classes 1 and 2 are satisfied. The amount of the dividends to be paid to this class is estimated to total $116,131.00 and to meet the requirements of the strict priority rule required by the Bankruptcy Code these Class 4 claimants will receive dividends equal to 100% of each allowed claim in the amount of such debt on the date of Debtor's petition for relief under Chapter 11, July 2, 2018.

**Class 4B claims**: The amount claimed in the proof of claim of Orbotech, Inc. (Claim No. 13) is disputed as to the amount of the claim and subject to objections pursuant to Paragraph XII below. Debtor scheduled Sparktech, Inc. in its Schedule E/F, [3.50] as "disputed" and "unliquidated". Sparktech Inc. did not timely file a proof of claim and is not treated in this Plan.

**Class 4C claims**: **Insiders:** To the extent of that undisputed Insider Claims are allowed such claims shall be treated as a unsecured claim and may be satisfied only after all other allowed claims have been satisfied. (For definition of an "insider" please see 11 U.S.C. Section 101[a][31].)

## C. DISCHARGE OF INDEBTEDNESS

The payments, distributions and other treatment provided in respect to each allowed claim shall be in complete satisfaction, discharge, and release of all claims that were filed or could have been filed by any creditor or party in interest that received notice of these proceedings.

## D. INTANGIBLE BENEFITS UNDER THE PLAN

Under the Plan as proposed, Dynalyst Corporation shall remain in possession of its assets and conduct additional business with existing creditors.

## E. MEANS FOR EXECUTION OF THE PLAN

Debtor will act as the Distribution Agent under this Plan.

## IX. AMENDMENTS AND WAIVERS

Except as otherwise specifically set forth in the Plan, any term of the Plan may be amended and the observance of any term of the Plan may be waived (either generally or in a instance and either prospectively or retroactively) upon compliance with the following provision:

Holders of Plan debts may amend, with the concurrence of the debtor-in-possession, or waive compliance with any term or condition of the Plan relating to or for the benefit of the holders of Plan debts or of such debt. The Plan may be modified, as may be appropriate, at the confirmation hearing.

# X. RETENTION OF POSSESSION AND JURISDICTION

The Debtor shall remain in possession of all property which shall be free and clear of liens upon confirmation, except as set forth above. The Debtor may operate its business and property, and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code. Debtor shall continue to pay its monthly expenses at their present level or higher if the business becomes more profitable. The Court shall retain jurisdiction of this Chapter 11 case during the next year and shall have exclusive jurisdiction of all matters arising out of this proceeding and the Plan pursuant to and for the purposes of sections 105 (a), and 1127 and 1142 of the Bankruptcy Code and for the following purposes:

(a) to consider any modification of this Plan under section 1127 of the Bankruptcy Code or modification of this Plan after substantial consummation, as such term is defined in section 1101(2) of the Bankruptcy Code;

(b) to recover all assets and properties of the Debtor, wherever located;

(c) to determine and fix all claims arising from the rejection or assumption of executory contracts or unexpired leases;

(d) to determine all applications for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment of executory contracts or unexpired leases to which the Debtor is a party or with respect to which it may be liable;

(e) to hear and determine all controversies, suits, and disputes that may arise about interpretation or enforcement of this Plan;

(f) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, or vacated;

(g) to hear and determine all requests for compensation or reimbursement of expenses which may be made after the Confirmation Date;

(h) to hear and determine all objections to claims, controversies, suits, and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Final Order of the Bankruptcy Court confirming the Plan;

(i) to consider and act on the compromise and settlement of any claim or any cause of action on behalf of the Debtor;

(j) to liquidate or estimate damages or determine the manner and time for such liquidation or estimation about any disputed, contingent, or unliquidated claim;

(k) to adjudicate all claims of any lien on any property or any proceeds thereof;

(l) to hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(m) to correct any defect, cure omission, or reconcile any inconsistency in the Plan or in the order of the Bankruptcy Court confirming the Plan as may be necessary to carry out the purpose and intent of the Plan;

(n) to consider and act on such other matters consistent with this Plan; and

(o) to enter a final decree closing the Chapter 11 case.

The Debtor has reviewed its transactions to determine if there exists a preferential or voidable transfer which may be recoverable. It has found none and believes that none exist and therefore there is no value to the estate in this regard.

## XI. MODIFICATION OF EXISTING CLAIMS

The provisions of all secured claims shall be modified as of the effective date of the Plan in accordance with the provisions of payment set forth in Paragraph VIII hereof. Any default shall be deemed to have been waived or cured by the holders of secured claims as of the effective date of the Plan.

Any creditor who has not within the time provided in the Plan or any Final Order of the Court, performed any act required in the Plan or in such Final Order shall not participate in any distribution under the Plan.

All claims not allowed or filed prior to the bar date as may be fixed by the Court which are scheduled as contingent or disputed, and not previously barred by Order of the Court, shall be deemed barred.

## XII. OBJECTIONS TO CLAIMS

The Debtor shall file objections to all disputed claims within ninety (90) days from the effective date of the plan. ANY CLAIM SUPPORTED BY A PROOF OF CLAIM THAT HAS BEEN TIMELY FILED WITH THE BANKRUPTCY COURT'S CLERK, AND THAT IS NOT SPECIFICALLY IDENTIFIED FOR TREATMENT IN THIS PLAN IS DEEMED TO BE DISPUTED. If no objection is filed within the time so limited to the allowance of any claim duly proved, such claim shall be deemed allowed in the amount in which it is proved and the holder of such claim shall be entitled to obtain a distribution order thereon. The Court may estimate the amount of any disputed, unliquidated, contingent, or other claim for the purposes of classification and/or voting under the Plan. The Debtor may, in its discretion, withhold payment of any disputed claim until the dispute has been resolved.

## XIII. NOTICES

After the date the Order Confirming Plan is signed by the Court, all notices required to be given under the applicable provisions of the Bankruptcy Code and/or Bankruptcy Rules ("Notices") shall be sent by first class mail, postage pre-paid, to LARRY A. VICK, Attorney for the Debtor-In-Possession at 10497 Town & Country Way, Suite 700, Houston, Texas 77024.

# XIV.  CONSEQUENCES IF DEBTORS' PLAN IS NOT CONFIRMED

There are three possible consequences should this Plan be rejected or should the Court refuse to confirm the Plan:

(1) the Court could allow the Debtor or some third party additional time to formulate a different Plan under Chapter 11;

(2) the case could be converted to a Chapter 7 liquidation case; or

(3) the Court could dismiss the case.

In Chapter 7 liquidation, a Trustee will be appointed.  The amount to be received by unsecured creditors will depend upon the net estate available after all assets of the Debtor have been deduced to cash.  The cash realized from liquidation of these assets will be distributed in accordance with the Order of Distribution prescribed in the Bankruptcy Code as follows:

(1) Payment of all Secured creditors.
(2) Administrative expenses of the Trustee.
(3) Administrative expenses of the Chapter 11 case.
(4) Priority Wage claims.
(5) Priority Tax claims.
(6) General Unsecured claims, including deficiency claim of secured creditor.

The Trustee would be entitled to receive compensation under Section 326 of the Bankruptcy Code.  Such compensation would not exceed 15% of the first $1,000.00 or less, 6% of any amount more than $1,000.00 but not more than $3,000.00, 3% of any amount in excess of $3,000.00 upon all monies disbursed or turned over in the case by the Trustee to parties in interest, excluding the Debtor, but including holders of secured claims. The Trustee's fee would be paid as a cost of administration and would be paid in full prior to the costs and expenses incurred in the Chapter 11 case and prior to any payment to unsecured creditors.

It can also be anticipated that the Trustee would retain his own attorneys and accountants, whose fees would be priority claims in the Chapter 7 case, with a higher priority than those administrative claims arising in the Chapter 11 proceeding.  These fees would be in addition to the Debtor's own attorney's fees.  A Chapter 7 trustee would not be in as good a position to generate cash through the continued operation of the Debtor's business as his duty is to liquidate rather than to reorganize the Debtor.  Quite often prices obtained by Chapter 7 trustees for estate property are less than market due to the constraints of sale including the need to "wrap up" the estate in a relatively short period of time.

The unsecured creditors could receive substantial less through a distribution under Chapter 7 of the Bankruptcy Code. Under the Plan of Reorganization set out herein the unsecured creditors would realize a recovery after the claims of Class 2 and 3 are satisfied.

## XV. RISKS TO CREDITORS UNDER THE DEBTORS PLAN

The priority and unsecured creditors should be aware that they are impaired under this Plan in that there will be delay in receipt of dividends. However, it is anticipated that priority and unsecured creditors could experience further delay in receiving dividends under Chapter 7 liquidation.

## XVI. TAX CONSEQUENCES

Discharge of debt in bankruptcy case under Title 11 will not be recognized as income. I.R.C. Section 108. A discharge is a judicially approved cancellation of debt. A Title 11 discharge, for purposes of the Internal Revenue Code, occurs in Chapter 11 cases under Section 1141.

As a rule, tax attributes are reduced or eliminated as a trade-off for not recognizing the debt forgiveness as income. Thus, the reduction of tax attributes which results from the discharge of debt merely delays that recognition. This is the tax "cost" of nonrecognition of discharge of debt income.

To the extent that the Debtor's debt is reduced or forgiven (if in Title 11), certain tax attributes of the taxpayer must be reduced. Internal Revenue Code Section 108(b) (2) sets forth the order in which these attributes are reduced. In rank order, the reducible attributes are: 1) net operating loss; 2) general business credit; 3) capital loss carryover; 4) basis reduction under I.R.C. Section 108; and 5) foreign tax credit.

Tax attributes are reduced one dollar for each dollar of debt discharged or forgiven, except in the cases of credit carryovers, which are reduced 33-1/3 cents for each dollar of debt excluded from gross income. The attributes are reduced by reducing net operating loss first, until it is exhausted, and then moving on to general business credit and so forth down the list.

The Debtor keeps its accounting records on a cash basis as opposed to an accrual basis and shall continue to do so.

## XVII. DISCLAIMERS

The approval of the disclosure statement is not a finding that the information contained therein is accurate and complete, and that approval of the disclosure statement is not an indication by the Court of the confirmability of the plan.

The function of Counsel is solely to include herein the financial information furnished by Debtor. Counsel expresses no opinion as to the accuracy of any financial information reported herein and disclaims that by so including any financial information Counsel has himself made any representation as to the accuracy of such information, all financial representations contained herein being totally disclaimed by Counsel.

## XVIII. SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE

There have been no other significant orders entered during this case and up to the filing of this Combined Plan and Disclosure Statement.

## CONCLUSION

The approval by the Bankruptcy Court of this Disclosure Statement does not constitute an endorsement by the Bankruptcy Court of the Plan of Reorganization or a guaranty of the accuracy or completeness of the information contained herein.

Dynalyst Corporation believe that this Plan will provide an opportunity for creditors to receive more than would be received in liquidation under a Chapter 7 Trustee and should therefore be accepted. Consequently, we urge you to vote for this Plan.

DATED this 28th day of February, 2019.

                                            Respectfully submitted,

                                            DEBTOR-IN-POSSESSION

                                            /s/ T. Craig Takacs_____
                                            Dynalyst Corporation by
                                            T. Craig Takacs, President

APPROVED:

LAW OFFICES OF LARRY A. VICK
10497 Town & Country Way, Suite 700
Houston, Texas 77024
lv@larryvick.com
(713) 239-1062
(832) 202-2821 - fax


By: /s/ Larry A. Vick_____
    Larry A. Vick
    Texas Bar No. 20563500

ATTORNEY FOR DEBTOR-IN-POSSESSION